Is in re Estate of Kujawa, John, deceased, number 518-0568, family regular. Where's the light? Oh, okay. I thought it was up here. Thank you. Good morning, Your Honor. Excuse me one second. All right. Excuse me one second. Oh, you're fine. May it please the Court, my name is Gary Meadows, and I am here today on behalf of Attorney John Hopkins and his law firm who were sued in a legal malpractice case. The issue on appeal in this case is whether the trial court erred in denying a motion for forum nonconvenience that we filed on behalf of Mr. Hopkins and his firm. As I've pointed out, I think, repeatedly in our briefing, forum nonconvenience is grounded on considerations of fundamental fairness and effective justice, those kinds of considerations. And we believe those considerations support a decision that the trial court erred in not transferring the case to Effingham County, where the underlying case necessarily had to proceed. And I'll just touch on the facts, just to make sure that everybody has a clue about what we're talking about. Mr. Meadows, I think we've read them, so let me ask you a question. Please. In your case, as you seem to be in your briefs, that the venue was an issue. Do you believe that the venue has to be appropriate in the underlying case or in the malpractice case, the legal malpractice? I guess we need to do legal versus medical. Correct. So what's your position on venue in this case? I think venue under statute is appropriate for Mr. Hopkins because his office is located in Madison County. Well, forum nonconvenience presumes that either venue is appropriate. But it seemed in one of the briefs that there was some argument that because the underlying case, the medical malpractice case, could not have been filed in Madison County. Correct. But somehow that impacted the court's decision. Do you understand my question? Correct. One of the arguments that we tried to spend a fair amount of time on was that the venue in the underlying medical malpractice case was necessarily fixed in Effingham County where the alleged medical malpractice occurred. There was no meaningful – that was the only venue that was available. And, indeed, the irony of this case, not to jump to the end, but the irony of the case, is that Mr. Hopkins was trying to – was looking for a vehicle to try to move the case from Effingham County. And then when his client – I believe he learned his client had relocated to Tennessee after he had filed the case in Effingham County where it had to be, he voluntarily dismissed the initial case and refiled it in federal court on the basis of diversity jurisdiction. The federal court found there was no diversity jurisdiction because it was the domicile of the decedent that mattered, not the domicile of the decedent's representative. And so he had to go back and refile it in Effingham because that was the only venue that was potentially available. And because of that, they then filed a motion to dismiss, which was granted because there's no secondary filing under Illinois' rules. So I'll just be up front about it. In this case, we have conceded that a legal mistake was made in terms of the view of the law and the thinking that the federal court could maintain the case. So the entire focus of this case is on the underlying medical malpractice case. If there was medical malpractice and a jury finds there was, then Mr. Hopkins is going to be responsible for that. If there is no medical malpractice case – I mean, if there is no finding of medical malpractice, then Mr. Hopkins will not be – obviously will be found not guilty of any wrongdoing or not approximately caused any problem. But my question is, are you taking the position that because venue in the medical malpractice case would be inappropriate in Madison County, that therefore the court should have transferred? Yes, that is clearly the point. And what case supports that? The two cases that we focus heavily on in our briefing were the Merritt case and the Brandt case. The Merritt case was 2005, I believe, and the Brandt case was 2007. In the Merritt case – and both out of this court – in the Merritt case, it was indeed a legal – both of them were legal malpractice cases. In the Merritt case, Mr. Hopkins was, in fact, the defendant who was sued in that case as well. He was sued for a claim of an inadequate settlement relative to a wrongful death case that he had to file in Alexander County, which is fairly deep southern Illinois. And so after he settled at his point and turned around, hired a different lawyer. That lawyer then sued him in Madison County for this inadequate settlement. The trial judge in that case determined in response to a motion for formal convenience that the case should not be transferred. They then proceeded to try the case. Mr. Hopkins lost, and I don't remember the exact verdict, but it was $600,000 or $800,000, a substantial verdict. It then was appealed, and this court reversed that verdict on the basis of the evidence that was presented and then went on to say, and moreover, the court should have transferred the case to Alexander County, where the underlying case was venued. One of the factors of that was that venue in the Alexander County wrongful death case could not have been brought in Madison County. So basically the only basis for a Madison County venue was because the legal malpractice claim couldn't be brought against the lawyer there. But nothing about the wrongful death case could ever have been brought there. And the brand case then followed a couple of years later, and so the point was venue necessarily considered where the venue could have been filed in the underlying wrongful death case, and this court found that the legal malpractice case shouldn't have been allowed to be decided in Alexander County, where the underlying case was proceeding. And as a footnote, it makes a substantial difference, at least it did in that case. That case was retried, and the defendants were found not guilty of any wrongdoing. You said Brandt was in a different case. I'm sorry. Yes, and then we move on to Brandt. Now, Brandt, that's an All-America case. The Brandt case, a lawyer and his colleague were sued for the inadequate settlement in St. Clair County. They apparently officed there and did all their work there. And there was an underlying FBLA case that apparently arose in Missouri. Now, in that situation, what they did, there was a foreign non-convenience motion. The trial court found that venue, that form was proper in St. Clair County, where the lawyer and his colleague were. And there was several things that that court talked about, because they also had that court at that time had to compare its holding to merit and to try to distinguish what the differences were. And, you know, so we had merit where the venue would not have been proper in Madison County, so transfer was appropriate. We then move on to the issue in Brandt. And the court in that case specifically pointed out that although you never filed the underlying FBLA case, you could have easily filed it in St. Clair County that was a proper venue. And so, therefore, that's perfectly reasonable for this case to proceed here. There were other factors in that case, I think, that made it reasonable for that court to hold that St. Clair County was a proper form anyway, because there were also claims of fraud, because one of the defendants was holding himself out as a lawyer in St. Clair County, even though he apparently wasn't. So there was many reasons why St. Clair County had a clear interest. The other thing about that case I think that's very interesting is one of the comments is they said the focus in that case was on the legal malpractice. And the reason that was is because the FBLA defendant had already conceded its liability. They had already said, yeah, we're responsible, we have a problem. And so the only issue is was it an inadequate settlement? So the sole focus of the case was legal malpractice, which then obviously gives St. Clair County the greatest interest in determining the legal malpractice aspects of that case and not the case within the case of the FBLA action. In our case, so the bottom line is that when you look at those two cases, the only way to, not the only, I shouldn't be able to say that, the way to reconcile them and the way that the Brandt case reconciled specifically is they looked at the, what would be the underlying proper venue for the, what would be the proper venue for the underlying case? Where the underlying venue was, for example, Alexander County, and they couldn't have filed it in Madison County, the case should have been transferred. On the other hand, where the case could have been properly venued in St. Clair County, they found that there was property to sue the lawyer in St. Clair County. So in this case, I understand that the plaintiffs are from Washington County. Correct. Whereas in Merritt, the plaintiffs were from Alexander County. Right. So does that make a difference? Compared to Merritt, there's two differences with Merritt, and that's one of them. I mean, in Alexander County, everybody was from Alexander, I shouldn't say everybody. The plaintiffs were all from Alexander County. That's where the case had to be filed. And that's, and so it was a slightly cleaner argument. On the other hand, the ironies in Merritt, if you look at the trial, four of the seven witnesses were from Madison County. And yet, even though more than half the witnesses were from Madison County, this court found that transfer was appropriate because venue was properly fixed in Alexander County in the underlying case. The whole point of this. I just want to make one clarification to your argument. Sure. Because you keep saying the court found it was appropriate. What the court found is the trial court abused its discretion. True. I mean, that's a big difference. No, I understood. So, I mean, the analysis is always abuse of discretion. Correct. Okay. And my point in this case is I think the trial court abused its discretion in basically not accounting for Merritt or in basically discounting its effect at all. And I think we're actually, in some respects, stronger than the Merritt case in the sense that Madison County would never have been a proper venue for the underlying Venmo case like Merritt. And in the Merritt case, more than half the witnesses were from Madison County as opposed to this case where the only connection to Madison County is the fact that Mr. Hopkins' office is there, so there will be one witness out of probably 15 or more. It's hard to know exactly. And so the only connection is that he will be a witness, but, again, because he's already conceded that the mistake was made, his testimony will probably be not terribly significant to the outcome of the case. The case is going to rise or fall with the medical malpractice aspects of it. And so, I mean, I think to a certain degree we are actually stronger than Merritt in that regard, going back to your question, Your Honor, that your distinction is a correct one, that in this case the plaintiff is from Washington County, as I recall. But as a practical matter, and as we point out in the briefs, in terms of convenience, that's about equidistance. It's basically that if you put on a map Madison County, Effingham County, Washington County, it's the same basic trip each way. So the bottom line is that's why we talked a lot about how the number of witnesses in the medical malpractice case, which, frankly, we're in the position of defending the medical doctors and the hospital staff, and so we necessarily are going to have to rely on them almost exclusively to defend this case. And they're all in and around Effingham. And so what we're talking about is a variety of practical and real problems, trying to make sure that we can get them to a trial live, because they're the only ones, Mr. Hopkins can't speak to exactly what they did. Indeed, the reality was that this case was filed, and basically it was then, he then dismissed it and we removed, not removed, and refiled it in federal court within a matter of months. So the discovery, there was no discovery, no meaningful discovery, no depositions. So we basically worked from a skeletal set of pleadings in the bad mouth case. In this case, the underlying case is going to have to be fully developed at this point with those people and using those people at trial. Where do you think, and the court issued a very detailed order. So where in the court's order do you believe the court abused its discretion? I think the court abused its discretion. As to what factors, things like that. Right. I think the court abused its discretion when we're discounting merit. That's a legal argument. I'm asking, like, for example, do you think it gave too much weight to the location of the plaintiff? I do think that one of the things that I think sort of jumps out is assuming, if Plinth's argument was assumed correct, and I think the court came to the hearing, because he knows all of us, that Mr. Hopkins has his office there in Madison County. Who was the judge? Judge Mutch. What? He came in, and in fact, on the record, he starts talking about, well, Mr. Hopkins is just down the street here in his office. I think he's with Mr. Brewery's office now. But the point is that he came in, and I think he focused almost exclusively on that at the hearing, and basically suggesting it with that fact that how can one ever prove inconvenience across the weight of all the factors. But I submit if that's the sole yardstick for if you are physically present in the county, then basically you're discounting all the rest of the factors as having any import. I don't think you understood my question. There was a six-page order, single-spaced, issued by the court, regardless of what he said at the hearing. Right. For example, plaintiff's choice of forum. Here he accorded it less deference. Do you agree with that principle? Do I agree that Judge Mutch accorded it less deference? No. Do you believe that that rule of law under these circumstances? Correct, because it was not her home venue, so some deference but not less deference. Right. And then that's what I'm asking you about is if you look at the order, where in the order do you take umbrage with what he has to say? Obviously the court is, this court, the Supreme Court, all the courts now in Illinois have said ease of access to documentary and real evidence is not a big deal anymore because of electronics. We don't disagree with that. Testimonial evidence you may have some disagreement with. No, I do disagree. Paper documents, yes, that can be something that can be obtained either way. I think the biggest issue is the testimonial evidence. Okay, so what is it about his order that you take issue with? Because it seems to me that as I went through this, he started from the initial, in fact, he was volunteering facts that weren't even necessarily being argued at trial about Mr. Hopkins' location. We conceded right away he's in Madison County. And what about Washington County, Marion County? There's something about Marion County here? I think that is, I believe he might be referring to one witness who might reside just across the Effingham County. No, I'm sorry, he's referring to a Marion County witness, apparently the plaintiff, apparently the plaintiff's deceit worked at a CPA firm in Marion. Okay, but it's your burden here before us today to talk about this order and the abuse of discretion. Well, I think the abuse of discretion is he singularly focused, he absolutely went through the issues, but I think his application of it was incorrect. That's what I'm trying to get you to tell me is why. One, he did not account for the consideration of where the venue in the underlying case would have been properly, he didn't account for that at all, and that was a large part of my argument, and he just rejected merit as being something that wasn't, he said it was unique. Okay. So I think that's clearly an error. He is correct that Mr. Hopkins is located in Madison County. He did not address the argument that I made at trial, or that I made, sorry, that I made at the hearing relative to Mr. Hopkins, you know, the legal inconvenience of when your entire faith rises or falls on the ability to secure the medical witnesses, which he addresses later, he basically, I think he relied on a case, and that was not a foster case, I think Your Honor wrote, and he brought that up himself. Neither of us had actually briefed him candidly. I had not read it before that date. I'm not insulted. So, but the bottom line is he basically went on and said, he went and said, it's the fact of trial, not the place of trial, citing your language in foster for these medical witnesses, and I think, and I disagree with that completely, because when you're being sued as a defendant, as a defendant doctor or nurse or hospital, you necessarily are going to have to be at trial, regardless of whether it's a day, a week, two weeks, you're going to have to stay and be engaged in the process. In this case, it's not the fact of trial that's going to be inconvenient to these people, it's the place. I mean, these folks are all in and around Effingham, and the reality is they're not going to be sitting in a trial for a week or ten days. They're going to come whenever we can get them to show up, whether it's once or twice during the trial. I don't know how that's going to exactly work. Well, you don't represent those people. Pardon me? Do you represent the doctors and hospitals? No. Have they moved to intervene in this case? No, because once they prevailed on the dismissal of the underlying case, they technically have no legal concern other than having to defend their reputation, having to defend these claims, these criticisms that are being leveled at them. So they're going to have to, I'm going to have to figure out a way to get them to come to trial. One of my problems, and this is a, I've had other forum issues where I chase down witnesses galore, produce plenty of affidavits, whatever can be said about the location, convenience, things like that. This is a unique situation because I genuinely have no ability to contact these people, these physicians, because of the, because of Petrillo. And so we're sort of hamstrung a little bit, which makes it even more important. Well, you can contact their attorneys through their insurance carriers. Right. Right now they don't have, I don't believe that. The hospital has a lawyer for sure. No, no, that's true. But I've also seen people suggest that that's a Petrillo problem when you start dealing. But that's another issue. But the bottom line. You can take their depositions even for the length of the case. That is true. That is true. And that's where we'll have to do that one way or another. I mean, it's a sticky wicket. I mean, so on the one hand, you're saying you, excuse me, Judge. I'm sorry. Go ahead. On the one hand, you're claiming that they're going to sit there all day every day, which I sincerely doubt, especially since you don't even represent them. But on the other hand, you're saying, so you're saying they're going to sit there every day. And on the other hand, you're saying, I can't talk to them, so I don't really know what's going on. Well, I'll have to figure out what is permissible at that point in time. Well, I'm just saying it's the argument in and of itself seems a little bit inopposite, if you will. I don't think so. When the time comes, we'll have to figure out a way to get them to a peer trial, which obviously we can do via subpoena if necessary. But the reality is that we're not in a position where we can just call them up and say, I need you here too. It's going to just make a more difficult situation. And frankly, those are the key witnesses for this case. Okay. Thank you. Thank you. Counsel, you'll have an option for rebuttal. Thank you. Thank you. Good morning. And may it please the Court, counsel, I'm hopeful that this panel has some sympathy for, or at least empathy for both of us, really. It's a terrible challenge to walk up here and say something fresh or new. You have seen this so many times. There is so much law, so much ink spilled about this. I find myself struggling to tell you anything you don't know or to offer a nugget, a thought that you haven't thought before. Nonetheless, with the help of a metaphor, I'm going to talk about something that perhaps gets too little attention in this analysis. And then, just to be memorable, I'm, time permitting, going to offer the Court a challenge. What does not get... You may not get through that, you know. You may not get through that. Probably won't. One wants to come armed. There are certain turnstiles, if you will, to getting into the game. That is the final analysis, the balancing, the public-private. And I have them to reverse for you. They're all familiar. The point I'm making about them is they seem to get short shrift. Let me just begin with the observation that when the Court, that is the trial court, hears one of our motions, the judge is not wearing his sane robe that he wears or she wears when hearing law cases. That is to say, this is an instance where the trial judge has the wig on because it's it, he, she. They're sitting in equity. And the action that's being taken is not the result of a legal attack on my being in Madison County. It's an equitable one. And so when one thinks of the days, and it's been a long time, before law and equity were combined, I just wish to point out for the Court that that underscores how unusual this kind of remedy should be. Counsel, the Court in, Counsel talked about a couple of cases, I'm not sure, but the Court in Merritt was sitting in, you know, in your analogy, in equity in that sense. And this Court reversed, found an abuse of discretion in that case on certain facts. So I guess, I'm jumping right in, but how do you square this case with the whole in Merritt? I can't. I think that, I mean, I can't legally. I think the Court saw that case and was shocked by the verdict. The Court wanted that case overturned and did. And then in a paragraph at the end sort of threw in an, oh, by the way, transfer this case. Well, you know, Mr. Nelson, if that is truly the way you feel, then I guess we all go home. I mean, I totally disagree with you on your analysis of Merritt. I mean, to say that about the Court, while it's true that it may have appeared as an afterthought, I mean, there was a forum discussion about the convenience, where the expert practice, where his law firm was. They looked at the ease of access to evidence, compulsory process, cost of obtaining, et cetera, et cetera. I mean, if you read this case, it has nothing to do with your supposition that the Court somehow wanted it some other place. I don't think that's fair to the district. Right, and I see now how my words conveyed something I didn't intend them to convey. They convey disrespect, and it's certainly not my intent to do that. But I am trying to point out something, and I'll tell you now what it is. To my light, that Merritt case and this case, oh, and 99 out of 100 cases where a forum nonconvenience motion is filed, it's about forum shopping. I mean, that's the elephant in the room that the cases don't address. It's the elephant in the room that really this analysis doesn't address. I mean, I'm just trying to be candid with the Court that it doesn't take much imagination. Remember that this same defendant was hauled into court in his own county and suffered on the same theory, professional negligence, a bad verdict, and felt it was totally inappropriate. Indeed, the underlying case there was talked about and testified about as having a value that varied county by county. So what's going on here is Gary's client perceives that Effingham is a better location for him. I have, I will concede that I want this case in Madison County for all kinds of reasons. It just happens that on this battleground, I win. On which battleground? Convenience, in effect, on the battleground that you must, by virtue of our Supreme Court, work in. The Supreme Court has told you how to analyze these cases. And the cases are analyzed in a way that mostly addresses, broadly, convenience. But what this test does not look at or consider, I mean, really, of all the various factors that are considered, that's public, that's private, and all these turnstiles that I haven't talked about, I mean, never is a word breathed about form shopping. And I don't Mr. Nelson, I think at least most of us on this bench are old enough to remember the older form nonconvenience cases. The original form nonconvenience cases talk plenty about form shopping. So just because we've lost that term because hopefully the lawyers are doing it less and less doesn't mean that this is the basis of what form nonconvenience is. That may have been the start. It may have been the reason there are so many of these motions filed. But had you not been form shopping, perhaps we wouldn't be here. Correct? Yes, ma'am. Absolutely. So why are we to take our time? What I'm looking for is the same thing that I asked of your counterpart. Okay. Tell me why Judge Modge analyzed these factors in such a way that he did not abuse his discretion as it came to your client. I mean, if you don't believe in the doctrine, that's one thing. But we are faced with a six-page, single-spaced order which talks about all of the factors. Where should we look to say the judge was right or the judge was wrong? Or how do you counter what your opponent said about venue? That's how I started out. Well, not surprisingly, I'm here to defend Judge Modge's order. I think it's great. I, too, noticed it's a lot longer than most orders you see. It's six pages, as you said, single-spaced. It doesn't miss a beat. Every single factor is considered with all the evidence in the record, and it's great. There's nothing wrong with that order. He is doing what this appellate court has told him to do and what the Supreme Court tells him to do. And he points that out. And, you know, Judge, I am aware that forum shopping language had the privilege of writing an article for the Bar Association about 20 years ago, and it was on this subject. And, you know, forum shopping was brought up. And I look at forum shopping a little differently, ma'am. You know, I don't think it's unseemly. It's the ethical obligation to do your best for your client. And when there are perceptions that one county might be vastly better than the other, well, what can Gary do but file this motion? Or if you're a plaintiff's lawyer and the perception is you're going to get a lot better verdict or the value of the case is worth a lot more in settlement because of perceptions among insurance adjusters, which there are, and defense counsel, which there are. You know, Colossus uses jury verdict data to evaluate cases. So, you know, I don't ‑‑ I don't ‑‑ I'm hoping this court doesn't use the term forum shopping too disdainfully because zealous advocacy requires us to forum shop. We have to do everything we can under the law. And I'm suggesting that this court and our Supreme Court has an awfully busy docket looking at these forum cases. And maybe one reason why is that the test that has been handed down doesn't look directly at what's happening, which is seeking, you know, some kind of preferential venue for the case, whether it's the plaintiff or the defendant. And instead what you have is a test that ends up being terribly subjective. I mean, you've got public factors. You've got private factors. You've got a preference or a heavy finger on one side of the scales of justice in favor of the chosen venue. And I'll address your venue question if you have it, Judge, with respect to how much deference was given. But, you know, without a sense of here's the most important factor and it's worth three times as much as any other factor. You know, real people reading these decisions get really a cloudy vision of what's going on here. I mean, it's almost as if maybe forum shopping is on everybody's mind when they write their briefs and when they write their opinions. But it doesn't come through. And, again, to my likes, if forum shopping is the issue, let's just confront it head on and say, these are forum shopping cases and when does equity compel us to move the case or not? Well, counsel, in this case, the underlying issue here is the case within a case, which is originally an Effingham County case. Why shouldn't that be important? I think it should be important. It just shouldn't be the issue. Shouldn't an Effingham County jury decide what the value of the case is for that reason? No, I think that the Madison County jurors get to decide what the value of the malpractice case is. That's how I see it. But it's all based on the underlying case. Well, I guess I'm not ready to concede that. You've heard that counsel is going to admit liability. But, you know, it's more complicated than that. This is a malpractice case, and I think the court would err in placing, in creating a bright line rule, one, about where professional malpractice cases should be venued, and two, as long as we're sticking with this test, overemphasizing what is an element of proof. An element of proof in this negligence case is I have to prove the underlying case, of course. But that's just one consideration among more than seven, and there's no law that I've seen that says, hey, you've got to place this particular factor ahead of all the others. Or for that matter, aside from what Judge Gates was talking about, there's really no good law that says, oh, you know, we're going to throw this in, but it should only break a tie. It's a kind of minor consideration. So I hope that's helpful, Judge. Are you suggesting when you answered Justice Moore, you said assuming we're going to use this test? Yes, ma'am. Are you suggesting there's some other test because of form shopping? I'm hoping that you'll create one with this case. Okay. What would you like it to be? I'm so sorry. I have a little bit of a hearing deficit, Judge. I didn't hear you. And I have a cold. I'm sorry. What would you propose us to do? Pull a test out of the air? What are we supposed to do? What do you propose? I understand what you're saying because you can... You said to create a new test. Yes. What's it say? Well, because I think you should not lose the path of the law. You should offer to illuminate one portion of that path in a way it's not been illuminated before. I'll be specific. I've asked here or alluded to a court paying particular attention to what I've described as a real issue, which is form shopping. Now, within the confines of the directions from the Supreme Court, I think you can, as it were, insert a deeper analysis about form shopping right at the moment of one of those turnstiles. And the turnstile that I respectfully would like the court to suggest is that the trial court exercises its substantial discretion only in, here's the word, exceptional circumstances. And so what I would suggest is it's anything but exceptional. It's anything but exceptional for the parties to come to a court form shopping. You know, I appreciate the reception I'm getting, and maybe I'm completely misguided in this, but in my practice of law, we're always thinking about venue. When do you not think about venue? You think about it all the time. And you act on those thoughts. Then you file suits or you get moved and, you know, you respond to motions asking that your case get moved. You think about forums all the time. And to use a task that addresses that in a very particular way at that turnstile called the trial court exercises its substantial discretion in exceptional circumstances only is, I think, where one can begin to plant a seed of a test that directly addresses what, if I'm right, the test should address, which is, again, form shopping. While I agree with you that every good lawyer should look at form, indeed, that's what your client was doing. He was looking at the best form for his client. You know, the one thing about having the Internet is it allows me to pull up things. But our Supreme Court in 2012 in Fennell v. Illinois Central Railroad said this in paragraph 19. Courts have never favored form shopping, it cites Daudi. Decent judicial administration cannot tolerate form shopping as a persuasive or even legitimate reason for burdening communities with litigation that arose elsewhere and should in all justice be tried. Now, that is our directive from the Supreme Court. You're asking us to come up with the Nelson directive. Oh, that would be so kind. That's what we should call it. Or maybe. Maybe there's a Waterview article on it. How are we supposed to get around Fennell and overrule the Supreme Court? No, I think what you're doing is, what I'm proposing is completely consistent with Fennell. And Fennell is the case that the trial judge, Judge Mudd, cited during oral argument. And he wrote about it in his case in his own decision. And I think it's completely right. And my very point is the old saws in Daudi, they just don't get attention in the test. I mean, you know, where is the word form shopping in the seven-part analysis? Is it a private factor? Is it a public factor? You know, it kind of shows up. It comes in this whole burden on the community. Should we have, like Justice Moore said, why should we have a Madison County jury deciding whether Effingham doctors committed malpractice? I mean, that's a burden that's placed on that community, that court, the taxing body, because you've got to pay jurors. So these factors that were being talked about, at least public interest factors, all seem to point to the issue of form shopping. I mean, should we impose the burden on Madison County because it is a Madison County lawyer? Yes. Right? Yes. And he's making decisions about clients in Madison County. Probably filing that federal court pleading from a computer sitting in Madison County. Absolutely. Which is why I argue or want to argue in front of you that the tort occurred in Madison County. But that's what we're trying to get to. Okay. But is that even an issue in the case? Yeah, he's conceded my vote. So I don't think it's – first of all, so what I would point out is we're going to tactically give up liability in exchange for a better venue. I mean, that's structurally what is happening with that move, that chess move. And so, again, I would suggest that's endorsing form shopping. I mean, this is a – as we sit here, this is a convenience doctrine. I've sued the two defendants in their home for a tort at that location. If mental calisthenics are going to be employed here, it will be fitting that set of facts into Effingham County. Effingham County should have tried the Effingham County malpractice case. But this is a legal malpractice case. Thank you, Counselor. Thank you, Judge. Counselor, did you have something to add? Yes, thank you. I apologize that I forgot that, gentlemen. My name is Dave Nelson. And, of course, I represent the plaintiff, the estate appeal. Thank you, Counselor. The cornerstone of legal malpractice cases are that the plaintiff is to be put in the same position as if the underlying case had been allowed to proceed in a normal fashion. No better, no worse. Now, in real life, is that always possible? No. But to the extent that the case was filed in Madison County, the concession has been made by the plaintiff that they, in fact, did put themselves in a better position. That's fine. Which is what prompted the need for this form of nonconvenience motion. And as you look... Well, you want to put yourself in a better position. That's absolutely true.  I agree with you. All of the key witnesses are going to be in Effingham County, which is one of the factors. Another factor, as your Honor has pointed out, is who best to decide the medical malpractice aspects. Mr. Meadows, there's nothing that you can say to this Court that would allow me to believe, at least, that you're not seeking to go there to forearm shop for a lesser verdict. I mean, let's face it. Certainly, certainly. Certainly, I think, and Mr. Hopkins, in his testimony in the Merritt case, there was all sorts of talk about counties. And the testimony is some counties are historically preferable, better for plaintiffs, some are less better for plaintiffs. And I think in this case, Madison is going to be preferable. Effingham. Effingham. So that's why this issue is before the Court. And the vehicles we have to use it are these factors that are available under the Foreign Merit Convenience, which is where the medical malpractice witnesses that are going to set the stage for the entire basis of liability. We have conceded a mistake was made. Mr. Hopkins isn't going to speak to that other than probably being beaten up to some degree by the plaintiff in this situation. The, you know, and in terms of who has the greatest interest, and that's one of the, you know, who has the greatest interest in whether there was medical malpractice by local providers, it's an Effingham County jury. They have the greatest interest, Madison County jurors. My suspicion is, well, some of them may never even have been in Effingham. Who knows? Well, but Mr. Nelson could argue that the decision on whether or not to file in the Southern District versus whether to file in Effingham was an important legal decision from a tactical point of view. True. I don't know how the testimony is going to come out. Clearly, even though you've admitted liability, he could call Mr. Hopkins. Absolutely. And I'm sure he will. I could get a bigger verdict than the Southern. I mean, the whole deal is still open for grabs. Except that the case either rises or falls on whether there was medical malpractice. And this issue of venue, which is where I started with the issue. Yes, which is why, which is why, who has the greatest interest? Effingham County and the medical malpractice. Judge Mutz said he's a lawyer in Madison County. Therefore, Madison County has a great interest. And the reality is, what are they going to be deciding? They're going to be deciding the medical malpractice. They're not deciding the legal malpractice because that's already baked into the cake. But Mr. Hopkins purports to represent himself as a malpractice lawyer. Do people want to hire him? That's a fair point. Based on his decision making, which occurred in Madison County. No, that's a fair point. And it's not one that Mutz seems to, it's not one that Mr. Mutz, Judge Mutz, sorry, explained in his order, but maybe that was part of his thinking. I don't know. Judge Mutz's order is, we are to give Judge Mutz's order a great deal of deference. So how do you overcome that abuse of discretionary standards? I think he completely discounted Effingham County's interest in the result of the medical malpractice case. He didn't, I don't think he addressed that at all. He simply went to Madison County has an interest. So he discounted the argument that we made about Effingham County. Do you really think that's what his order says? Yeah, he didn't. You don't think he went through all this weighing process? I think he based his ruling on Mr. Hopkins is located in Madison County, and then the rest of this is going to flow from that, which is why he didn't apply merit, which is why he didn't look at the issue of whether venue would have been appropriate in the underlying medical malpractice case in Madison County. And that's where merit comes in. And that's why he just distinguished it as being uniquely localized. And I think this case raises a legal malpractice setting where more metropolitan lawyers, whether it's Chicago lawyers, St. Clair of Madison, they're filing cases or defending cases in outlying counties, and to suggest that the only connection is that's where the office is and everything else starts in another county. The witnesses are there. The liability is there, whatever it is, to suggest that they should be expected. The plaintiffs are much closer to Madison. I'm sorry? The plaintiff is much closer to Madison. I don't believe that's correct. Isn't it in Washington County? I think that the record reflects it's about equal, 70, 80, 90 miles, something like that. It's in the same ballpark. So the bottom line is that for legal malpractice lawyers, for example, in the worst-case scenario, Chicago unless we would just ask that the court review the record and we would ask for an order reversing judgment and allowing this case to proceed in effing infinity where the case should probably proceed. Thank you. Thank you, counsel, for your arguments. The court will take this matter under advisement and render a decision.